IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CONSTRUCTION SPECIALTIES, INC., | : Case No.: 4:05-CV-1863 |
| Plaintiff, | : Judge Jones |
| v. | : |
| ED FLUME BUILDING SPECIALTIES, LTD., et al., | : |
| Defendants. | : |

**MEMORANDUM AND ORDER**

September 28, 2006

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Pending before the Court is Plaintiff's Motion for Summary Judgment ("the Motion") (doc. 36-1), filed on July 5, 2006. Plaintiff's Motion seeks summary judgment on the claims Plaintiff makes in its Complaint (doc. 1-1) and the claims made against it in Defendants' Counterclaim (doc. 17-1). For the reasons that follow, the Motion will be denied.

**PROCEDURAL BACKGROUND:**

On or about August 11, 2005, Plaintiff Construction Specialties, Inc. ("Plaintiff" or "CSI") commenced this action by Writ of Summons in the Court of

Common Pleas of Lycoming County, Pennsylvania.  Plaintiff filed its Complaint in Assumpsit on August 15, 2005 seeking recovery of the purchase price for products manufactured at its Muncy, Pennsylvania plant and shipped to Defendants.  On September 15, 2005, pursuant to 28 U.S.C. § 1446, Defendants removed the suit to this Court on the basis of diversity jurisdiction.

On July 5, 2006, Plaintiff filed the instant Motion (doc. 36-1), which has been fully briefed by the parties.  The Motion is, therefore, ripe for disposition.

**STANDARD OF REVIEW:**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990).  The party moving for summary judgment bears the burden of showing "there is no genuine issue for trial."  Young v. Quinlan, 960 F.2d 351, 357 (3d Cir. 1992).  Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a fact finder could draw from them.  See Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982).

Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact.  See Celotex Corporation v. Catrett, 477 U.S. 317,

323 (1986). This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial. See id. at 325.

Rule 56 provides that, where such a motion is made and properly supported, the non-moving party must then show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e). The United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of their case that a reasonable jury could find in its favor. See Celotex, 477 U.S. at 322-23 (1986).

It is important to note that "the non-moving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact." Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 511 (3d Cir. 1994) (citation omitted). However, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992)(citations omitted).

Still, "the mere existence of *some* alleged factual dispute between the parties

will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "As to materiality, the substantive law will identify which facts are material." Id. at 248. A dispute is considered to be genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

**STATEMENT OF RELEVANT FACTS:**

Although the parties largely agree about the general circumstances that gave rise to the instant case, they disagree on several areas. We will not attempt to conduct a piecemeal examination of each fact presented by the parties, but will discuss the relevant factual background necessary to resolve the pending Motion. We will, where necessary, view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party, Defendants, in our analysis of the pending Motion.

Plaintiff Construction Specialities, Inc. ("Plaintiff" or "CSI") is in the business of manufacturing and supplying building and construction material and products. (Rec. Docs. 36 at 2, ¶ 5 and 45 at 1, ¶ 5). Defendant Ed Flume Building

Specialities[1] ("Defendant" or "Flume") operates as a manufacturers' representative that solicits and secures the sale of various manufacturers' products to contractors. (Rec. Docs. 36 at 4, ¶ 13; 45 at 1, ¶ 6). Defendant also engages in the resale of certain speciality construction supplies and products to the public. (Rec. Docs. 36 at 2, ¶ 6; 45 at 1-2, ¶ 6).

On or about June 5, 2001, CSI and Flume entered into a Sales Representation Agreement[2] ("Agreement") in which Flume contracted to promote and solicit orders for CSI's products. (Rec. Doc. 47 at 2; Def.'s Exh. 1). Flume alleges that pursuant to the Agreement, it then in fact undertook to promote and solicit orders for CSI's products. (Rec. Doc. 47 at 2). It apparently did so to CSI's satisfaction until some point prior to February 23, 2004, when CSI sent Flume a letter indicating that CSI was concerned about Flume's "lack of sales results over the past 12 months" and "poor follow-up" on quoted jobs and that Flume's performance would be evaluated again on June 1, 2004. (Rec. Doc. 52;

---

[1] Although two businesses, Ed Flume Building Specialities, Inc. and Ed Flume Building Specialties, Ltd., have been named as Defendants, parties refer to them as "Defendant" or "Flume" or "The Representative" in the pleadings and exhibits. Thus, for the sake of clarity, hereinafter they will also be referred to as one entity, "Defendant" or "Flume."

[2] Flume's relationship with CSI as a sales representative is actually governed by two agreements. (Rec. Docs. 36 at 4, ¶ 13; 45 at 3, ¶ 13). However, for the sake of clarity and because the relevant portions of the two agreements are identical (docs. 36 at 4, ¶ 13; 45 at 3, ¶ 13), they are herein referred to as the "Sales Representation Agreement" or the "Agreement."

Pl.'s Exh. 1 to Tieso Depo.).  CSI alleges that CSI's Western General Sales Manager, Mark Sneller, told Flume of CSI's dissatisfaction in 2003.  (Rec. Doc. 52 at 2).

On or about July 22, 2003, CSI had received a request for quotation ("RFQ") from the HB Zachry Company ("Zachry").  (Rec. Docs. 47 at 3; 52 at 3). Flume alleges that the RFQ was solicited and obtained by Flume, and the Court has no reason to find otherwise, particularly in light of CSI's concession that it later reduced Flume's commission on the Zachry Order.  (Rec. Doc. 36 at 4, ¶ 16). The reduction in Flume's commission indicates that at some point, CSI intended to pay Flume a commission on the order.  CSI would never have planned to do so had Flume not had a role in the obtaining the RFQ.

The date on which the Zachry Order was placed is disputed.  On September 24, 2004, Zachry emailed CSI a "PO number" in the amount of $4,221,829. (Def.'s Exh. 10).  Flume apparently relies on this email when it alleges that the Zachry Order was received in September of 2004, only seven (7) months after the letter indicating that Flume was on probation was sent.  (Rec. Doc. 47 at 4). Reasonable minds could infer the referenced "PO number" to be a purchase order number, indicating that an order had been placed in September.

However, CSI claims that the Zachry Order was placed in December 2004,

ten (10) months after Flume was notified in writing of its probationary status. (Rec. Doc. 52 at 4). CSI apparently bases its allegation on the December 7, 2004 letter that CSI sent Zachry, thanking Zachry for the order. (Def.'s Exh. 10).

In addition to acting as a sales representative for CSI, Flume also purchased products directly from CSI for resale. (Rec. Docs. 36 at 4, ¶ 13; 45 at 3, ¶ 13). CSI alleges that between November of 2004 and May of 2005, Flume ordered products from CSI valued at $116,594.87. (Rec. Doc. 36 at 3, ¶ 7). CSI further contends that a contract between the parties provides that payment for these products was due thirty (30) days after delivery of the products, that Flume failed to make the required payments, and that Flume's failure to pay the principal entitles CSI to $116,594.87 plus interest, collection costs, and attorney's fees. (Rec. Doc. 36 at 3, ¶¶ 7-11).

However, Flume denies the accuracy of the principal that CSI alleges and the applicability of the penalty provisions that CSI cites. (Rec. Doc. 45 at 2, ¶ 7). Specifically, Flume alleges that certain items shipped by CSI to Flume were rejected by Flume (doc. 45 at 2, ¶ 7); Lydon Flume testified to that effect in his deposition. (Def.'s Exh. 3 at 75-76). Flume also alleges that certain charges, including sales tax, were improperly assessed by CSI. (Rec. Doc. 45 at 2, ¶ 7). In his deposition, Lydon Flume testified that Flume is a tax-exempt entity, that CSI

had a certificate to that effect on file, and that after CSI terminated Flume, CSI began billing Flume for sales tax.  (Def.'s Exh. 3 at 75-76).

In addition to disputing the amount of money owed to CSI for the supplies shipped to Flume, Flume asserts that any money it has withheld has been as a result of CSI's failure to pay Flume the commissions that Flume claims it is owed for the Zachry Order, which are a basis of Flume's Counterclaims.  (Rec. Doc. 45 at 2, ¶¶ 8-9).  CSI understands Flume's rationale for not paying CSI for the products, but it asserts that the Agreement does not afford Flume that right.  (Def.'s Exh. 20 at 53-54).  However, CSI asserts that Flume's failure to pay for the CSI products it received is a reason that CSI has failed to pay Flume any commissions on the Zachry Order.  (Def.'s Exh. 20 at 53-54).

The parties agree that pursuant to the Sales Representation Agreement, commissions "shall be deemed earned by The Representative [Flume] when the account of the customer has been paid in full or settled to The Company's [CSI's] satisfaction."  (See Def.'s Exh. 1, ¶ 7.3; Rec. Docs. 36 at 4, ¶ 14; 45 at 3, ¶ 14).  The parties also agree that the Agreement provides that CSI may reduce the total commission payable on a particular order under certain circumstances.  (Def.'s Exh. 1, ¶ 7.4; Rec. Docs. 36 at 4, ¶ 15; 45 at 3, ¶ 15).

The circumstances under which commissions earned under the Agreement

may be reduced by CSI are discussed in paragraphs 7.4 and 7.7 of the Agreement. (Def.'s Exh. 1, ¶¶ 7.4, 7.7). Paragraph 7.4 of the Agreement reads:

> In the event that The Company [CSI] determines that it must reduce its selling prices below published book values in order to remain competitive, it may at its discretion, reduce the commission payable to The Representative with respect to such work. Although the decision of The Company is binding, The Company shall advise The Representative [Flume] of such lower commission in advance of bid, or prior to final negotiations of the net delivered value with the customer.

(Def.'s Exh. 1, ¶ 7.4). Paragraph 7.7 of the Agreement states:

> If The Representative [Flume] fails to comply with any of the provisions outlined in Articles II, III, IV of this Agreement concerning Assignment, Authority and Duties, or if it is necessary for The Company [CSI] to send salesmen in to the assigned territory or market to handle project(s) that are not being handled adequately by The Representative, the regular commissions will be reduced to reflect any and all additional costs and expenses incurred by The Company. The Company shall determine in its sole discretion the amount of any reductions under this Paragraph from the commissions otherwise due The Representative.

(Def.'s Exh. 1, ¶ 7.7). The total commission payable on any order obtained pursuant to the Agreement is divided into portions, one of which is the "order credit" portion. (Rec. Docs. 36 at 5, ¶ 17; 45 at 4, ¶ 17).

The parties disagree as to the amount of commission Flume is seeking. CSI alleges that Flume is claiming the "order credit" portion of the commission on the Zachry Order, which amounts to $120,000. (Rec. Doc. 36 at 5, ¶ 18). Flume admits that it is seeking the "order credit" portion of the Zachry Order, but denies

9

that the amount of the "order credit" is $120,000. (Rec. Doc. 45 at 4, ¶ 18).

The parties also disagree as to whether Flume is owed commissions on the Zachry Order. CSI argues that in accordance with paragraph 7.4 of the Agreement, it initially reduced the total commission payable on the Zachry Order to $350,000. (Rec. Doc. 36 at 4, ¶ 16). Flume agrees that CSI reduced its commission to $350,000, but it denies CSI's right to do so. (Rec. Doc. 45 at 3, ¶ 16).

Further, CSI argues that it later exercised its absolute discretion under paragraph 7.7 of the Agreement when it determined that Flume was not entitled to any commission on the Zachry Order. (Rec. Doc. 36 at 6, ¶ 22). CSI cites Flume's failure and/or refusal to perform its duties under the Agreement in connection with the Zachry Order, as well as the need for CSI to use its own salesmen to handle the Zachry Order, as justification for its decision. (Rec. Doc. 36 at 5, ¶¶ 20-21).

However, Flume alleges that it performed its duties and developed the relationship between CSI and Zachry until Flume was excluded from the relationship by CSI. (Rec. Doc. 45 at 4, ¶ 20). Several submissions by Flume corroborate Flume's allegations: numerous letters and emails between CSI and Flume from July 23, 2003 through June 3, 2004 could lead reasonable minds to conclude that Flume was actively working on CSI's behalf in soliciting an order

from Zachry.  (See Def.'s Exh. 4 (July 23, 2003 and/or July 30, 2003 letter from Flume to CSI requesting an estimate for Zachry); Def.'s Exh. 5 (CSI's September 3, 2003 email regarding a recent phone conversation with Flume, in part regarding Zachry); Def.'s Exh. 6 (May 6, 2004 letter from Flume to CSI indicating that a purchase order requirement agreement between Flume and Zachry had been entered); Def.'s Exh. 7 (May 25, 2004 letter from CSI to Flume answering Flume's questions); Def.'s Exh. 8 (June 3, 2004 letter from Flume to CSI requesting revised prices)).

Further, Flume alleges that contrary to the terms of the Agreement, CSI ceased copying Flume on correspondence after Flume procured the relationship between CSI and Flume.  (Rec. Doc. 45 at 4, ¶ 21).  Indeed, Flume alleges that CSI breached its duty of good faith and fair dealing by withholding information and correspondence related to the Zachry Order, as well as other orders, from Flume and by depriving Flume its commissions.  (Rec. Doc. 45 at 5, ¶ 22).  Several internal emails among CSI employees confirm that CSI had become very deliberate in its dealings with Flume.  (See Def.'s Exh. 12-16).  Indeed, CSI's Vice President of Marketing, Paul Moulton, concluded his June 23, 2004 email to Ken Major:

> Please keep this in mind as you move forward with the Flume issue.  We all want to see a new rep down there and this job should not save Flume but we have to play it carefully.  I'll let you know if and when we manage to build a

bridge around them to Zachry.

(Def.'s Exh. 12).

Finally, the parties disagree as to whether this Court can determine whether any commissions are due Flume. (Rec. Docs. 37 at 11-12; 47 at 11-12). CSI notes that it has just begun to ship products to Zachry and that no payments have been made by Zachry (doc. 36 at 6, ¶ 24). Flume admits that CSI has just begun to ship products to Zachry and that Zachry has not yet made any payments to CSI, but Flume argues that these facts do not prevent the Court from making a determination as to its entitlement to commissions on the Zachry Order. (Rec. Doc. 47 at 11-12).

**DISCUSSION:**

In the instant Motion, Plaintiff seeks summary judgment in its favor on the claims made in its Complaint and on the claims made against it in Defendant's Counterclaim. (Rec. Doc. 37 at 1). Plaintiff's Complaint seeks $116,594.87 plus interest, attorney fees, and collection costs for Defendant's alleged breach of contract. (Rec. Doc. 1-1 at 19, ¶ 20). Defendant's Counterclaim consists of two counts. (Rec. Doc. 17-1). Count 1 seeks damages for Plaintiff's breach of contract, as well as an accounting. (Rec. Doc. 17-1 at 12-13). Count 2 seeks damages for Plaintiff's breach of the implied covenant of good faith and fair

dealing. (Rec. Doc. 17-1 at 14). Defendant seeks $204,842.29 plus additional, undetermined commissions in damages. (Rec. Doc. 17-1 at 13, 15).

Plaintiff argues that the instant Motion should be granted as to its breach of contract claim because there are no genuine issues of material fact and Plaintiff is entitled to judgment as a matter of law. (Rec. Doc. 37 at 1-2). To establish a claim for breach of contract, plaintiffs must show: 1) existence of a contract, including essential terms; 2) breach of a duty imposed by the contract, and 3) resulting damages. <u>Pittsburgh Constr. Co. V. Griffith</u>, 834 A.2d 572 (Pa. Super. 2003), <u>alloc. denied</u> 852 A.2d 313 (Pa. 2004).

After a careful review of the record, we conclude that read in the light most favorable to Defendant as the nonmoving party, genuine issues of material fact exist as to the damages to which Plaintiff is entitled under its breach of contract action.[3] CSI alleges that between November of 2004 and May of 2005, Flume ordered products from CSI valued at $116,594.87 and that the parties' contracts, memorialized by CSI's invoices, provide that Flume's failure to pay the principal entitles CSI to $116,594.87 plus interest, collection costs, and attorney's fees.

---

[3] The Court expresses no opinion as to whether the CSI invoices constitute a contract or whether Flume breached that contract by failing to pay the amounts billed on the invoices. However, even if there were a contract and a breach, the damages that CSI incurred are material, disputed facts. Thus, summary judgment on Plaintiff's breach of contract claim is inappropriate.

(Rec. Doc. 36-3 at 3, ¶¶ 7-11).  CSI has provided this Court with invoices and invoice summaries supporting its assertion.  (See Rec. Doc. 1-1 at 21-100).

However, Flume denies the accuracy of the principal that CSI alleges: Flume alleges that certain items were rejected by Flume (doc. 45 at 2, ¶ 7) and that certain charges, including sales tax, were improperly assessed by CSI (doc. 45 at 2, ¶ 7). Support for Flume's allegations is found in Lydon Flume's deposition testimony. Lydon Flume testified that certain items shipped by CSI to Flume were rejected by Flume and that Flume is a tax-exempt entity, that CSI had a certificate to that effect on file, and that after CSI terminated Flume, CSI began billing Flume for sales tax. (Def.'s Exh. 3 at 75-76).

Thus, which items were rejected by Flume and whether sales tax charges were improperly assessed are genuine issues of material fact, rendering summary judgment improper.  Further, given the factual dispute as to the principal owed to CSI, this Court cannot determine the applicability of the penalty provisions that CSI cites.  (Rec. Doc. 45 at 2, ¶ 7).

Plaintiff also argues that the instant Motion should be granted in its favor on Defendants' Counterclaims because Flume's breach of contract and breach of the implied covenant of good faith and fair dealing claims are not yet ripe. (Rec. Doc. 37 at 11).  Plaintiff argues that the issue of whether Flume is entitled to

y

commissions is not ripe because the commissions are not yet payable. Plaintiff cites paragraph 7.3 of the Agreement, which states that commissions "shall be deemed earned by The Representative [Flume] when the account of the customer has been paid in full or settled to The Company's [CSI's] satisfaction." (Def.'s Exh. 1, ¶ 7.3). Plaintiff also cites paragraph 7.10 of the Agreement, which governs when commissions are to be paid. (Rec. Doc. 37 at 11). Plaintiff argues that because Plaintiff has just begun to ship products to Zachry and no payments have been made by Zachry (doc. 36 at 6, ¶ 24), no commissions are due to Flume at this point. (Rec. Doc. 37 at 11-12).

Flume admits that CSI has just begun to ship products to Zachry and that Zachry has not yet made any payments to CSI, but Flume argues that this issue is ripe for disposition because commissions are determined when orders are accepted. (Rec. Doc. 47 at 11-12). Although the parties disagree as to the month of the Zachry Order, they agree that it was accepted in 2004. (Rec. Docs. 52 at 4; 47 at 4). Thus, even if the Zachry Order was placed in December, nearly two years have passed since its acceptance.

Plaintiff's argument, though creative, cannot prevail. As indicated in Travelers Ins. Co. v. Obsusek, 72 F.3d 1148, 1154 (3d Cir. 1995), "[t]he function of the ripeness doctrine is to prevent federal courts 'through avoidance of

premature adjudication from entangling themselves in abstract disagreements.'" Paragraph 7.5 of the Agreement indicates that this is not an abstract disagreement. It states that "[w]ithin fifteen (15) days after acceptance of an order, The Company [CSI] shall estimate the amount of commission and issue an order acknowledgment to The Representative [Flume] advising the amount so determined." (Def.'s Exh. 1, ¶ 7.5). Accordingly, because the Zachry Order was accepted in 2004 (docs. 52 at 4; 47 at 4) and many more than fifteen (15) days have passed, this Court can "estimate the amount of commission and issue and order acknowledgment to The Representative advising the amount so determined." (See Def.'s Exh. 1, ¶ 7.5). Flume's entitlement to commissions on the Zachry Order are ripe for this Court's disposition.

Finally, Plaintiff's alternative argument that it is entitled to summary judgment on Flume's Counterclaims because the Agreement provides it discretion in reducing the commissions paid (doc. 37 at 13-15) cannot succeed. The Court recognizes Plaintiff's argument that paragraph 7.4 of the Agreement enables CSI to reduce commissions in the event that CSI had to reduce its selling price below book values. (Def.'s Exh. 1, ¶ 7.4). The Court also agrees that paragraph 7.7 of the Agreement provides CSI "sole discretion" in determining reductions in commissions if the representative fails to comply with the Agreement or perform its

duties, or if CSI had to use its own salespeople to close a sale. (Def.'s Exh. 1, ¶ 7.7).

However, Defendants have not only made a counterclaim for breach of contract, but also a claim for breach of the implied covenant of good faith and fair dealing. (Rec. Doc. 17-1 at 14). Defendants have supported their claims with several internal CSI emails that indicate CSI's intention to terminate the Agreement with Flume, fulfill the Zachry Order, and deny Flume any commissions on that order. (See Def.'s Exh. 12-16). CSI's Vice President of Marketing, Paul Moulton, June 23, 2004 email to Ken Major is particularly telling:

> Please keep this in mind as you move forward with the Flume issue. We all want to see a new rep down there and this job should not save Flume but we have to play it carefully. I'll let you know if and when we manage to build a bridge around them to Zachry.

(Def.'s Exh. 12). CSI's internal emails could lead reasonable minds to conclude that Plaintiff violated the implied covenant of good faith and fair dealing when it reduced Defendants' commissions to $0 pursuant to paragraph 7.7 of the Agreement. According, summary judgment cannot be granted on Defendant's Counterclaims.

In summary, Plaintiff's Motion for Summary Judgment is denied. First, Plaintiff's Motion for Summary Judgment on its claim in the Complaint fails

17

because genuine issues of material fact exist as to Plaintiff's damages under its breach of contract claim. Second, Plaintiff's Motion for Summary Judgment on Defendant's Counterclaims fails as well. Plaintiff's initial argument fails because whether Flume is entitled to a commission on the Zachry Order is an issue ripe for determination by this Court: paragraph 7.5 of the Agreement provides that fifteen (15) days after acceptance of an order, CSI is to determine the amount of commission to be paid, and the Zachry Order was placed in 2004. Many more than fifteen (15) days have elapsed, and thus, the issue of whether commissions are due is ripe. Additionally, Plaintiff's alternative argument that it is entitled to summary judgment on the Counterclaims because the Agreement provided it absolute discretion in reducing Flume's commissions fails because its internal correspondence during the development of its relationship with Zachry could lead reasonable minds to conclude that it was breaching the implied covenant of good faith and fair dealing.

**NOW, THEREFORE, IT IS ORDERED THAT:**

    1.    Plaintiff's Motion for Summary Judgment (doc. 36) is DENIED.

    s/ John E. Jones III
John E. Jones III
United States District Judge

19